ELMER SHILES, DEFENDANT IN ERROR, v. PUBLIC SER-
VICE CORPORATION OF NEW JERSEY, PLAINTIFF IN
ERROR.

JACOB WHITE WILSON, DEFENDANT IN ERROR, v. PUB-
LIC SERVICE CORPORATION OF NEW JERSEY, PLAINT-
IFF IN ERROR.

Submitted December 7, 1908—Decided March 1, 1909.

While driving his horse attached to a covered wagon along a street in
 Woodbury, plaintiff looked through a small window of the wagon
 in the back of the top to ascertain if a trolley car was approach-
 ing; he testified he saw none and turned his horse, which was on
 a walk, to cross the track, when a car struck the horse, killing
 him, and demolished the wagon. *Held,* that a denial of these facts
 presented a question for the jury.

On error to the Supreme Court.

For the plaintiff in error, *Edward Ambler Armstrong.*

For the defendant in error, *John Boyd Avis.*

The opinion of the court was delivered by

MINTURN, J.   These suits for damages were tried together
at the Gloucester Circuit, and a verdict was rendered for the
plaintiff in each case, the judgment record upon which is
brought here for review on writ of error.

The plaintiff Wilson was employed as a driver by the
plaintiff Shiles, and, while driving a horse attached to a cov-
ered wagon, carrying milk, on May 10th, 1907, in a southerly
direction, along Broad street in Woodbury, he turned his
horse to the right to cross the southbound track of defend-
ant's railway for the purpose of calling at the store of one
Munyan, but, before he was able to cross, his horse and wagon
were struck by a southbound trolley car of defendant com-
pany, which threw the horse into the air some twenty odd

feet and drove the wagon in a dismembered condition over one hundred feet distant, killing the horse and injuring its driver. The car, after the collision, ran a distance of about four hundred and fifty feet from where the collision occurred, dragged the horse along the track a distance of twenty-six feet, and drove the top of the wagon about seventy-seven feet from the place of collision.

Munyan, who kept the grocery store to which point the driver was directing the horse, saw Wilson about fifty or seventy-five feet distant before reaching the scene of the accident, driving, as he says, upon a "jog trot." "I looked up the street," he testified, "to see if I could see a trolley coming; I didn't see any whatever; I went in the store and stood at the net door for a second and the next instant I saw a car, but he (plaintiff) was coming across the track; I should judge his front wheel was about one foot from the east track of the southbound track." The plaintiff, this witness continued, was trying to cross the track at an angle, and "almost in an instant after I saw the horse on the track I saw the trolley car coming" a distance of between seventy and eighty feet away as nearly as the witness could estimate. The car, he says, was "going fast," and, he continues, "The next thing I saw I watched the car until I judged it was getting within five or ten feet of the wagon and I closed my eyes for a second; the next instant I saw the horse turn a somersault and landed twenty-seven feet six inches from where it was struck." And the car, he says, carried four hundred and forty-nine feet from the place of collision.

The plaintiff Wilson testified that, after he started to cross the track, having left the middle of the road, he knew nothing; that before he crossed he looked through a glass window located in the back curtain of the wagon top and saw no car; his horse was on a walk, and he turned to cross when a car struck the horse, and the plaintiff knew no more.

Other witnesses in behalf of plaintiff substantiated this situation and the defendant met it by producing the motorman, the conductor and two passengers, the weight of whose testimony, as opposed to that of plaintiff's witnesses, upon the

contributory negligence of plaintiff as well as the speed of the car, was for the jury.

It may also be observed that it was competent from this testimony for the jury to infer that at the time the plaintiff Wilson drove his horse upon the track the trolley car was at least seventy or more feet distant, and to reason therefrom that if the motorman was then in the exercise of due care in the control of the car the accident would have been avoided.

The trial court properly refused a nonsuit, and, with equal propriety, refused the direction of a verdict for the defendant, because the issue was essentially one of fact. Whether the plaintiff Wilson was in the exercise of due care when he attempted to cross the track; whether the car was proceeding at an unusual and dangerous rate of speed under the circumstances; whether the motorman was exercising the degree of care required of him by law in the control of his car under the circumstances; whether the negligence of the defendant company, if it existed, or the contributory negligence of plaintiff, if it existed, was the proximate cause of the injury, were all questions under the testimony for the jury, and no exception can be supported to the charge of the trial court in that regard. *Pennsylvania Railroad Co.* v. *Righter,* 13 *Vroom* 180; *Merkl* v. *Jersey City, Hoboken and Paterson Railway Co.,* 46 *Id.* 654.

This conception of the main question involved in the case enables us to concur in the view taken of the remaining exceptions by the learned counsel for the plaintiff in error, "that they are relatively unimportant and possibly of no importance." We are, at least, of the opinion that the rulings of the court, to which they are directed, were not productive of injurious error to the defendant.

The judgments under review will be affirmed.

*For affirmance*—THE CHANCELLOR, CHIEF JUSTICE, GARRISON, SWAYZE, REED, TRENCHARD, PARKER, BERGEN, VOORHEES, MINTURN, BOGERT, VREDENBURGH, DILL, J.J.    13.

*For reversal*—None.